and we'll begin with Mr. Carroll. May it please the court. John Carroll on behalf of the appellant Michael Dennis and with my co-counsel Antoine Johnson and I will be presenting the argument today. In this case where Mr. Dennis was charged by indictment with the offense of conspiracy to possess with intent to distribute marijuana, a trial was held after a lengthy pre-trial period where Mr. Dennis had a number of different attorneys representing him who came into the case, made appearances and later withdrew and were replaced by other attorneys. At no time prior to the trial counsel coming on board did these attorneys file substantive pre-trial motions. But it was a year, almost a year late, right? That is correct, Your Honor. That's a long time. It is a long time. And the reality is, I mean, all these different attorneys doing what they do, whether that's a 2255 case or not, is that really relevant here? I understand that, Your Honor, and I'm certainly not arguing that that issue. The issue that I wanted to discuss with the court first is that of the denial of leave to file motions to suppress. And I also intend, and I apologize I got ahead of the denial of a motion to discover limited pre-sentence report information of co-actors and issues regarding the reasonableness of the sentence. But on to the motion for leave. So trial counsel came in and they knew what they were getting into. The case was set for trial in September, September 11th. Trial counsel entered their appearance August 9th, 2019. They had just over a month. And the district court recognized, and this is significant, the district court recognized that these counsel were the first counsel who were actually preparing the case for trial and recognized that the other attorneys were working on the possibility of a plea and working on plea bargaining and thereby did not go forward and seek to file pre-trial motions. So the question is whether Mr. Dennis and his trial counsel established good cause for the filing of, for the late filing rather, of the pre-trial motions. And why is having counsel who are focused on pleading good cause for waiting till the last minute to file something that was due a year ago? Because, Your Honor, there can be adverse consequences to a pleading defendant who starts off his defense with the filing of a substantive motion to suppress evidence, including that the government may withdraw a plea offer once extended. The government may make a harsher plea offer because of the contesting of issues by the defense. Yeah, but couldn't it also be more advantageous to the defendant? I mean, if you've got a motion to suppress that knocks out some key evidence in the case, doesn't that get you a better plea? Yes, Your Honor, it certainly could. And that is one of the considerations. However, what I'm looking at for the court and arguing is that these counsel could reasonably have foregone that, thinking that they're going to be in a better plea situation with what they might think the court is seeing as a full acceptance of responsibility. It's also the government seeing that. And so that might be a reasonable position for a lawyer to take and to advise his client in not going forward and filing a motion to suppress. I would like to note— Again, I mean, lawyers every day make all kinds of decisions that, in retrospect, you could say, oh, I wish I'd made a different decision. How is that good cause? That's the piece that I'm trying to make sure I hear from you. It is the lawyer's call. And certainly the lawyer could be overruled by the lawyer's client, but that's not something that the court gets involved in. I understand that, Your Honor. But I would like to point out that this was a case involving retained counsel. In my practice, oftentimes court-appointed counsel will be going forward on behalf of a defendant and will withdraw well after the motion's deadline is filed and that sort of thing, and new counsel will come in on an Antonio, where I'm from, will allow that new court-appointed lawyer to file motion to suppress evidence and substantive motions even though the deadlines have passed. And I know there's good reason for that, and I think it shows respect for counsel, but I think that it's to do as a retained counsel situation as well. But that's the point, counsel. The court kind of makes the call here, right? We're talking about abuse of discretion as to whether to grant this motion. Where's the abuse of discretion by the district court here? Your Honor, I would argue that the abuse of Counsel was allowed to make an appearance, and the court was going to let them try that case, even though they came in with only 30-plus days before trial. Once allowed in, the court should have permitted them when they acted with diligence as best they could in securing the discovery, getting motions filed, and seeking hearings. In the Denman case, which is the case that announces that standard of abuse of discretion, this court said, we will assume without deciding that the district court abused its discretion when it allowed counsel to enroll and continued the trial, but refused to extend the scheduling order even briefly to allow the newly enrolled counsel to file pretrial motions. And I know that that gives some guidance, but it's not certainly a... But wasn't this like the seventh set of lawyers? Something like that? Something like that, Your Honor. Okay. So it's not like the person was desperately trying to find a retained counsel and had an appointed counsel who was ignoring him, et cetera, et cetera, and finally his mom or something paid for someone, and la, la, la. This was a continuing series of in-and-out attorneys, and the judge had kind of felt like it's time to get this case tried. Yes, Your Honor. And the judge did say that, and the judge is on the record saying that. However, the judge could have allowed these motions to go forward, and I would suggest to the court, and I know we've been talking about the question of good cause, but I think that the second factor is harm, and I think there is harm in this case in that it's a serious substantive issue that is being dealt with by the courts that... Okay. Let's assume, arguendo, that this motion was filed on time and denied, and we're just dealing with the core issue of, you know, was this photography of cameras acceptable? How do you respond to the question of, I could stand in the street and see what these cameras saw? Let me ask one question preparatory to that. What defense did this man have other than one that you now want to make, that is, an illegal search and seizure? Your Honor, the defense was based on, yes, the search and seizure issues, seeking to suppress evidence, and also questioning the veracity of the historical testimony from the cooperating defendants who, the defense argued, were uncorroborated and had motive to fabricate their testimony. Well, what jumps out at you looking at this case is that this is its case. I mean, this is the core of the case, given the nature of it, and yet no one, and there's no movement going forward on the only issue that is really in the case. So that, to me, answers the question of the district court's docket maintenance. Your Honor, the court is correct that... There was not progress by the defense until the trial counsel came along. And, Your Honor, I would like to address one other issue, and that being the motion that was filed for limited information from the precincts... Well, can you get back to Judge Haynes' question, please? I'm sorry, Your Honor, I apologize. I'm interested in that, too. Judge Haynes asked you whether... About the poll cameras? The visibility, yes, and the evidence... Yes, yes, Your Honor. So, and I'm sorry, the reason that... That was my fault. It's, this sustained, this sort of sustained surveillance is not the kind of thing that police are going to do, that law enforcement's going to do. They're not going to park someone up on a pole for three months, 24 hours a day, seven days a week. I thought that it's not like somebody was in an airplane, you know, looking down, but that it was something. I realized I would not stand out on the street and film your house all day, every day, for three months. I get that. But if I did, in this particular case, you would get the same thing the poll cameras got, right? There was no dispute on that. Yes, Your Honor. Okay, so that's, I thought that was the standard. That's a little different from the cell phone, but this wasn't a cell phone case. So we're just talking about what can I see versus if you did something where you had maybe a pole that was 300 feet high and they put a camera there and it was able to overlook your 10 foot, very sturdy fence that otherwise would bar anybody who's shorter than 10 feet from seeing into your yard. And Your Honor, under the Supreme Court authority in Carpenter, this sort of, this sort of continuous surveillance breaches a reasonable expectation of privacy. So that the courts should get involved, the courts should get involved when the executive, when law enforcement seeks to conduct this sort of surveillance. If it's warrantless, then we're under the surveillance state. If there's a warrant, then a court can step in and approve this sort of conduct. And a court should be called upon to do that. As in Cuevas Sanchez, that case was a warrant case and the court actually spelled out the types of information that should go into a  If you have nosy neighbors, you need a higher fence. Because even if they're not doing it night and day, I mean, I just read some story about somebody whose neighbor across the street is now watching all of the houses to make sure somebody isn't coming in pirating all of their deliveries. So she sits there all day and looks at everybody's house. Isn't that what we kind of have here? Well, the nosy neighbor is not the state and the nosy neighbor goes to sleep every day and the nosy neighbor leaves their house sometimes. And I don't mean any disrespect to this person who's apparently helping her neighbors, but you know what I'm saying? I mean, the bottom line is, if you really don't want people to see what's going on in your yard, you need a higher fence or you need a bigger block or whatever, because otherwise your friendly neighbor, your nosy neighbor, or your pole camera can see what's going on. Your Honor, I don't think that the law requires that, and I think that there is a reasonable expectation of privacy. What's your best case? I'm sorry? Your best case on that point. Cuevas Sanchez and the Supreme Court decision in Carpenter. Okay. Now you have just very little time left and I know you wanted to address a sentence, which of course we don't get to if we end up agreeing with you on everything else. Yes, Your Honor. We wanted information about what the quantity was that was assigned to co-actors in their pre-sentence reports. It's very limited. We weren't asking for anything anybody said, just the quantity, because quantity drove this case. Quantity is what made the guidelines sky high in this case. And as a matter of fairness, if Mr. Cooperating Defendant testified that I delivered 9,000 pounds of marijuana, or 9,000 kilograms of marijuana to this person over a three-year period, I would be interested in seeing what his pre-sentence report said was his relevant conduct. Now, the judge may have said, that's fine, his relevant conduct was 9,000 pounds, but I'm going to give him a lesser sentence for a variety of reasons, including his cooperation, a 5K motion from the government, whatever. However, we need to know where we start. Because if Mr. Dennis is assigned 9,000 kilograms because of what Mr. Trevino said, but Mr. Trevino was only assigned at the outset 100 kilograms of marijuana, that calls into question the entire sentencing process. But does your argument then support the notion that any time you have co-conspirators, or alleged co-conspirators, you get to see all the PSRs? No, Your Honor, but I think in this case, where the quantity was so important, and it was such a high amount assigned to Mr. Dennis, that it would have been appropriate. You've saved time for rebuttal. Thank you, Your Honor. All right. Mr. Durbin. Good afternoon. May it please the court. Let me start with the denial of the motion for leave to file motions to suppress out of time. I don't think the district court abused its discretion. This court, candidly, I'm not entirely clear where this standard works when it comes to the issue of prejudice. To determine whether the court abused its discretion in denying the leave to file out of time, this court has identified cause and prejudice. In connection with cause, in Denman, as Mr. Carroll points out, the court or the panel assumed that the late addition of counsel was a cause. The facts aren't entirely clear. In this particular case, as you point out, Judge Haynes, I believe this was the eighth and ninth lawyers for Mr. Dennis by the time they joined this case. They joined a month in advance. Mr. Dennis was put on notice multiple times in February and June that there would be no more continuances, that they would have to be ready to go. The filing deadline for motions to suppress was a year before. I think that was back sometime in September of 2018. This court's decision in Knezek, which we cite in the brief, said that late hiring of counsel is not cause for prejudice. Otherwise, everybody would hire different counsel, right? If they realized they wanted something they didn't get. I also think that the judge made reference to, she didn't have time to do this because she has a busy docket. That Del Rio docket, I think there's no surprise, is an incredibly busy docket. She does it almost all by herself. She has that consideration as well. She had made it clear to the multiple previous counsel. Additionally, as far as prejudice is concerned, the court's decision in, I believe it was Vasquez, which we also cite in the brief, which looked at prejudice, it basically said that there's no prejudice shown for a late filed motion to suppress under the plain error standard. You apply the plain error standard to that particular motion. In this particular instance, and Mr. Carroll didn't spend a lot of time on it, but to get to the question of prejudice, as he said, it has to show some kind of harm. Does that mean that he would have prevailed on the merits on that motion in order for there to be harm?  he would not have prevailed? The issue that was raised in that motion on the poll camera is whether or not Carpenter applies to this type of technology and this type of surveillance, which Carpenter, in its main opinion, said, this does not extend to security cameras. It's not clear, under any circumstances, that Carpenter would apply to this. The world of cell phones has been treated by the Supreme Court actually somewhat differently than sort of the rest of the world. I think because cell phones have become so much part of your core and just follow you everywhere you go, which is a little different from your neighbor sitting across the street and watching your house. Right. Right. Exactly. I mean, Carpenter is what it is. But what about the notion that the, quote, nosy neighbor or the friendly neighbor or whatever, the neighbor that's been sitting and watching your house all day to make sure that the packages aren't pirated or whatever, he or she's going to go to sleep, you know, et cetera. But this camera won't. Well, what if you have two neighbors and they're tag team? I mean, which is, I mean, I have neighbors that don't sleep. Well, I don't know. But it is different than the state. No question it's different than the state. But I think, you know, several circuits... But the expectation of privacy is based upon, you know, what the world can see, right? Yeah. Can a person see it from where they're standing on the street? So that includes your neighbors, even your friendly neighbors. That includes your friendly law enforcement officer who happens to go... Who might be your neighbor. Who might be your neighbor. And I think that's what Cuevas Sanchez, I mean, that's the way I read Cuevas Sanchez, is they put, we put, I was there when we did this, we put the camera on top of this pole to look over a 10-foot privacy fence. And we got a warrant in that circumstance because it did look down into something where there was a subjective expectation of privacy and under the circumstances this court said it was a reasonable expectation of privacy. But that fence you couldn't see through, right? That fence you could not see through, they looked over. And this fence was... It was more like a wall. I'm sorry? It was more like a wall. Yeah, it was a barrier so that you couldn't see. In this instance, I think that the evidence shows he was trying to keep out people, not prying eyes because he had a wrought iron fence around. He also had like a four-foot fence in the back which most people are taller than four feet. And it wasn't very long and it didn't really block any views. It's a very short fence according to the photos. The other thing I want to point out before I forget it is the judge considered these motions on their merits. She noted that the motion to suppress based on the search warrant, that was a purely legal issue of whether or not there was sufficient probable cause. The trial judge here, as I understood it, was keenly aware of what these issues were about when he refused to extend additional time for them to file. Exactly. A succession of lawyers and retained counsel had returned their retainer to him on the basis that they just couldn't help him because they realized that he only had one defense and they couldn't sustain it. So the judge had that all in his head as a trial judge would and he said we're going to have to stick to this docket. So it all kind of meshes together. And she talked it through. She talked it through at some length because the parties fully briefed the issue concerning the poll camera. There were photographs that were attached to it. So you're saying she didn't rely solely on the untimeliness. She did not. I don't think she did. I don't think she did. But I just want to get back to that core point. Like if we're not doing plain error, we're just reviewing it regularly as if it had been preserved, as if the motion was filed on time. Talk to me about this issue of sort of the neighbor. If the neighbor can see it, well, is that enough? Or what is that standard there? Because as you said, it's a little unclear in Carpenter because, again, the cell phone and the tracking the cell phone and all of that, that's a little different world from what I've seen of what the Supreme Court does. But nonetheless, nowadays, since the world is different and technology allows so much more staring at you than the old world did, where should we be on that? Well, Judge, the way I think that it breaks down is the first question is is the use of the camera and setting it there and pointing it at the house or the back of the house, is that a search? And the cases are pretty well established including Cirolo and Dow Chemical that the pole camera can be used to view what is open to the public. And the defense counsel stipulated that the cameras had a view that was open to the public. That wasn't the argument. The argument was this is a technological circumstance because of the length of the continuous surveillance that under Carpenter converted it to a search. And the notion under Carpenter was it collects so much information about the movements of a person that it basically collects the entirety of their movements going backward in time that can be captured quickly with the click of a button. Does it matter, like if you were pole camera-ing somebody I think that's a word, but anyway for three months and only one event occurred at 2 a.m. a month and a half into it would that be different from where the pole camera is picking up quite a bit more information over those months? I don't think that it does. I don't think that it should because I don't think pole camera picks up the kinds of movement and the kind of information that the Supreme Court was concerned with in Carpenter is that the totality of information about a person's total movements that tells law enforcement or tells anybody who's surveilling that where they are, when they're there who they meet with, what their associations are of all types and all kinds and all this showed was what went on in the house. It showed who showed up there how long they were there. What went on outside the house? Outside the house. It did not look in the house. If he didn't stick a camera inside that would be a very different story. He had his own cameras inside. Right, but they didn't stick one. They did not stick one in there and what they saw was what could be seen by a passerby on the street and so the question then turns I think, Judge, is not so much is the observation the search but is the length of time and capturing it for that length of time and does that convert it under Carpenter into a search? Several circuits have considered this question. The First Circuit most recently in an en banc case the Moore-Bush case they split evenly and so they did not conclude that a very similar circumstance I think it was an eight month video surveillance or poll camera of the side in front of a resident and the court en banc split evenly and did not conclude that that was a search and Carpenter didn't apply. But if you have no expectation of privacy then the duration should not matter. We have municipalities who put up cameras to ticket people when they go through late they take a picture of them and they send you a ticket in the mail and they make a lot of money out of that and cause a lot of accidents too. I think Texas barred that. That's an extreme situation there's no expectation of privacy there but it's a 24-7 screen whatever. Well that's right plus I think that Carpenter didn't go there. There may be some principle in there somewhere there may be something in Carpenter and Jones that someday the court but I'm not sure that they're going to get there with it and they certainly haven't yet. The 7th circuit in the case called Tuggle considered it very carefully a panel of them and one of the things that that opinion talked about, I thought Judge Sloan really did a good job at the beginning of the opinion talking about how diminished our privacy expectations have become with cameras and video all over the place. Wherever you are at any time I know I'm being recorded I don't have a camera but I'm assuming that I am and so that sort of alters our notion of what expectation is and if expectation of privacy is going to be extended to the length of a period of surveillance Carpenter doesn't do that. That's not what Carpenter does and it's specifically accepted from its holding video cameras. I don't know if I've answered your question. Your argument is even if we went ahead and concluded that it should have been allowed to be filed and treated as timely then Dennis would still lose. The judge's decision, her factual determinations were not clearly erroneous and she properly applied the law as it existed. Even putting aside whatever the review is plain air. Even putting aside the question of whether or not there's been prejudice because of the denial based on untimely filing. So I think that she loses either way. So what's your answer? Because you would then get to sentencing. What's your answer on this issue of being able to see the PSRs of your friends, your alleged friends? Well, I think the district court again did not abuse discretion in this particular circumstance. First of all, what Dennis wanted them for was for the purpose of comparing whether his sentence was going to be disparate with accomplices who were also prosecuted. And the drug quantity, as he points out, yes, it did govern or sort of drove the sentencing ranges but it's not legally relevant. The disparity consideration under section 3553A6 calls on the court to look at whether or not there's disparity in sentencing on a much broader scale, not if there's differences in sentencing between defendants. And I point out, the district judge knew what those drug quantities were. She may not have told the defense counsel, but she knew what those quantities were. Moreover, the information was not really factually relevant in this sense. The judge knew what those accomplices had done in terms of they all pled guilty, they all cooperated. And that always makes a difference in the sentence. It does. Two of them testified at Mr. Dennis' trial. Maybe this doesn't matter but it was also significantly below guidelines, wasn't the sentence? His sentence in the end, she departed 12 years, or very 12 years, I don't know which one technically it is, but at the end of the day, he was facing 360 months to life and she sentenced him I think to 216 months. Does that answer the marijuana argument that he should get some credit for the fact that, in his view, marijuana is not as bad as other drugs? I think what his argument I'm not agreeing or disagreeing No, I understand. I think what it is is the judge failed to consider marijuana but should have considered the legalization of marijuana. And I think what the judge was saying was, I'm not persuaded by that. But the judge did consider the marijuana because she gave her reasons. And of course, Texas still has banned marijuana. Yes, but what she said in the end is, well, there's people with methamphetamine, which is a far more dangerous and more serious drug, who get this kind of time. And she basically was doing this calculation of her own that marijuana is not as dangerous as methamphetamine, which is sort of remarkable knowing the judge that I do, as I do. And from that, she departed 12 years down. So, I don't think there was I don't think there was any harm in the way she treated it. And I don't think that she was required to consider marijuana as okay, it's legal some places, so we shouldn't be we shouldn't be punishing it the same way. Because Congress hasn't changed those punishments yet. Nor has Well, I mean, you could argue those states should be those federal courts should be continuing to treat it as illegal because the federal courts are supposed to treat it as illegal. One could make that argument. I'm not necessarily making it. I understand. It could be made. And I don't know that he reached the substantive reasonableness. I don't know where he was going with it. But I think that answers the question on the marijuana. His brief also challenges the drug quantity finding. I don't believe the drug quantity finding or the methodology based on the testimony of accomplices and what they brought. Bettencourt, years ago I think in 2005, basically said testimony by accomplices can be credible, can be sufficiently reliable and the methodology for I did it Well, I don't think it's up to us to decide the credibility of someone's testimony absent some scientific, you know Absolute possibility or something like that. Anything else you want me to address? Okay. Thank you very much. We have your argument. Mr. Carroll, you've saved some time for rebuttal. Thank you, Your Honor. I would like to point out with respect to the poll camera issue that this court in Cuevas Sanchez in holding that, or in rejecting the government's argument that Cuevas did not have a reasonable expectation of privacy in activities conducted in his backyard visible to a casual observer based it on two things. One, the so that he had demonstrated this expectation, but the court also stated that it had to do with the area surveilled was within the curtilage of the home and that's where we get to the difference between the home as opposed to where you're out in public, that sort of thing. The Fourth Amendment gives special consideration to a person's home and their privacy in their home and so I would hope that that is something else that the court would consider and yes, the judge did conduct a hearing of sorts on the motion to suppress. However, she had already ruled that it was denied. She had ruled that I'm not going to allow you leave to file this motion. But one thing about being a district judge, until the final judgment is done and the time has passed to reconsider and all of that, you can change your mind. You can say, oh, it's untimely and then you hear the arguments and you're going, oh my heck this is really, really a problem. Maybe I should reconsider the untimeliness point. Let's talk some more. So the fact that she continued to listen and engage with everyone meant she was open to, even though she had ruled and had the right to rule, she was still listening and talking so that meant she could have certainly undone that ruling if she wanted to. Right? Yes, because it's in the middle of the case. But she didn't. Okay, but she listened quite a bit more than a lot of judges do. Because she could have said it's untimely, what's next? Yes, Your Honor, that's correct and not even allowed the lawyers to argue. But she did listen to argument. The only other point I would, in rebuttal, would raise that counsel for the government stated that we're complaining about disparity of sentences and what we're complaining about is the disparity of the sentencing process. I certainly understand that the court can give differing sentences to different people even if they're similarly situated based on many factors but in this case, it's the that's our concern that there is a disparity that there was possibly a disparity of where we started that should have been something that the defense This is a judge who does a lot of sentencing. Now, we can certainly reverse her but it's not like she's unaware of what's involved. Yes, Your Honor. Thank you. I thank the court for the additional time. I appreciate it. Thank you. We appreciate both sides' arguments. The case is now under submission.